IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

_____

MANITOWOC CRANES, LLC,

       Plaintiff,

                                      Case No:

   -vs-

SANY AMERICA, INC. and                JURY TRIAL DEMANDED
SANY HEAVY INDUSTRY CO., LTD.,

       Defendants.

_____

**COMPLAINT FOR PATENT INFRINGEMENT AND MISAPPROPRIATION OF TRADE SECRETS AND JURY DEMAND**
_____

Plaintiff, Manitowoc Cranes, LLC ("Manitowoc Cranes") alleges the following:

**I. PARTIES**

1. Manitowoc Cranes is a Wisconsin limited liability company with its headquarters at 2401 South 30th Street, Manitowoc, WI 54221-0070.

2. Upon information and belief, Defendant Sany America, Inc. (Sany America) is a Delaware corporation with its headquarters at 318 Cooper Circle, Peachtree City, GA 30269.

3. Upon information and belief, Defendant Sany Heavy Industry Co., Ltd. (Sany Heavy Industry) is a Chinese Corporation with its headquarters at Sany Industry Town, Economic and Technological Development Zone, Changsha, Hunan Province, China.

4. Upon information and belief, Defendant Sany America has done and continues to do business in the State of Wisconsin, including the Eastern District, by, among other things,

1

committing acts, either by itself or through intermediaries, that constitute misappropriation of the trade secrets of Manitowoc Cranes. The Sany SCC8500, which includes trade secrets misappropriated from Manitowoc Cranes, was designed, in part, in this District. Upon information and belief, Mr. John Lanning, formerly of Manitowoc Cranes, worked out of his home in this District to design the SCC8500. Upon information and belief, Mr. Lanning had frequent communication with employees of Sany America and Sany Heavy Industry from this District while designing the SCC8500. Mr. Lanning resides at 2908 North County Road H, Reedsville, Wisconsin 54230.

5. Upon information and belief, Defendant Sany Heavy Industry has done and continues to do business in the State of Wisconsin, including the Eastern District, by, among other things, committing acts, either by itself or through intermediaries, that constitute misappropriation of the trade secrets of Manitowoc Cranes. The Sany SCC8500, which includes trade secrets misappropriated from Manitowoc Cranes, was designed, in part, in this District. Upon information and belief, Mr. John Lanning, formerly of Manitowoc Cranes, worked out of his home in this District to design the SCC8500. Upon information and belief, Mr. Lanning had frequent communication with employees of Sany America and Sany Heavy Industry from this District while designing the SCC8500.

## II. JURISDICTION AND VENUE

6. The jurisdiction of this Court is proper under 28 U.S.C. §§ 1331, 1332, 1338. This action is a suit for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 et. seq., and for misappropriation of trade secrets under the laws of the State of Wisconsin.

7. Upon information and belief, Defendant Sany America sells a crane with the model number, SCC8500. Upon information and belief, Mr. John Lanning misappropriated trade secrets of

Manitowoc Cranes for use in designing the SCC8500. Upon information and belief, Defendant Sany America has misappropriated trade secrets in the Eastern District of Wisconsin. Upon information and belief, Defendant Sany America has done business in the Eastern District either directly or through intermediaries. Upon information and belief, Defendant Sany America has committed the tort of misappropriation of trade secrets in the Eastern District. In addition, upon information and belief, a substantial part of the events or omissions giving rise to the claims of Manitowoc Cranes occurred in the Eastern District. Accordingly, Defendant Sany America resides in the Eastern District as the term "reside" is defined in 28 U.S.C. § 1391(c) and, venue in the Eastern District is proper under 28 U.S.C. §§ 1391(b)(1), (b)(2), and 1400(b).

8. Defendant Sany America is subject to personal jurisdiction in Wisconsin and the Eastern District.

9. Upon information and belief, Defendant Sany Heavy Industry manufactures and sells for import into the United States the SCC8500 crane. Upon information and belief, Mr. John Lanning misappropriated trade secrets of Manitowoc Cranes for use in designing the SCC8500. Upon information and belief, Defendant Sany Heavy Industry has misappropriated trade secrets in the Eastern District of Wisconsin. Upon information and belief, Defendant Sany Heavy Industry has done business in the Eastern District either directly or through intermediaries. Upon information and belief, Defendant Sany Heavy Industry has committed the tort of misappropriation of trade secrets in the Eastern District. In addition, upon information and belief, a substantial part of the events or omissions giving rise to the claims of Manitowoc Cranes occurred in the Eastern District. Accordingly, Defendant Sany Heavy Industry resides in the Eastern District as the term "reside" is defined in 28 U.S.C. § 1391(c) and, venue in the Eastern District is proper under 28 U.S.C. §§

1391(b)(1), (b)(2), and 1400(b). In the alternative, Sany Heavy Industries is not resident in the United States and may be sued in this District under 28 U.S.C. § 1391(c)(3).

10. Defendant Sany Heavy Industry is subject to personal jurisdiction in Wisconsin and the Eastern District.

### III. INFRINGEMENT OF UNITED STATES PATENT NO. 7,546,928

11. United States Patent No. 7,546,928, on which David J. Pech and Kenneth J. Porubcansky are listed as the inventors, (the '928 Patent) was duly and legally issued on June 16, 2009, by the United States Patent and Trademark Office. Manitowoc Cranes is the owner by assignment of the '928 Patent.

12. The '928 Patent describes novel mobile lift cranes and methods for operating mobile lift cranes.

13. Defendants, without permission of Manitowoc Cranes, have been and still are infringing one or more claims of the '928 Patent as infringement is defined by 35 U.S.C. § 271 by making, selling, offering for sale, using and/or importing crawler cranes, including at least the SCC8500 Crane (the Infringing Products). Manitowoc Cranes requests an award of its actual damages caused by such infringement pursuant to 35 U.S.C. § 284.

14. Defendants had knowledge of the '928 Patent at least as early as January, 2010, when Mr. John Lanning joined Sany America. Mr. Lanning had knowledge of the '928 Patent prior to that date in his role as a patent liaison between the inventors and outside counsel while employed by Manitowoc Cranes.

15. Defendants had notice of the '928 Patent no later than the date upon which they received this complaint.

4

16. To the extent that Defendants have continued or do continue their infringing activities after receiving notice of the '928 Patent, such infringement is willful, entitling Manitowoc Cranes to the recovery of treble damages pursuant to 35 U.S.C. § 284. In addition, this is an "exceptional case" justifying an award of attorneys' fees and costs to Manitowoc Cranes pursuant to 35 U.S.C. § 285.

17. Manitowoc Cranes has suffered damage by reason of Defendants' infringement of the '928 Patent. Manitowoc Cranes will continue to suffer irreparable harm if Defendants are allowed to continue their infringing activity. Manitowoc Cranes believes that Defendants will continue to infringe the '928 Patent unless enjoined by this Court. Manitowoc Cranes requests, in addition to an award of its actual damages that have accrued to the date of Judgment, a permanent injunction against infringement from the date of Judgment until expiration of the '928 Patent.

18. Defendants have been and still are inducing infringement of and contributorily infringing the '928 Patent.

19. Upon information and belief, Defendants made, used, sold, offered for sale, and/or imported one or more Infringing Products after gaining knowledge of the '928 Patent.

20. The customers of Defendants directly infringe the '928 Patent by making lifts within the United States using the Infringing Products (e.g., the Ultralift configuration). Defendants knew that this activity by its customers directly infringed the '928 Patent, or were willfully blind to the fact that this activity by its customers directly infringed the '928 Patent.

21. Defendants knowingly and actively aided and abetted the direct infringement of the '928 patent by offering for sale, selling, and providing instructions for use of the Infringing Products to third-parties such that those third parties may use the Infringing Products in a manner that directly infringes the '928 Patent.

5

22. Upon information and belief, Defendants possessed the specific intent to encourage the direct infringement of the '928 Patent by its customers.

23. Upon information and belief, Defendants know and have known that their Infringing Products are especially made or adapted for use in infringement of the '928 Patent, that the Infringing Products constitute a material part of the invention, and have no substantial noninfringing use. The Infringing Products are not staple articles or commodities of commerce.

## IV. INFRINGEMENT OF UNITED STATES PATENT NO. 7,967,158

24. United States Patent No. 7,967,158, on which David J. Pech, Kenneth J. Porubcansky, Alan E. Pleuss, and John M. Lanning are listed as the inventors, (the '158 Patent) was duly and legally issued on June 28, 2011, by the United States Patent and Trademark Office. Manitowoc Cranes is the owner by assignment of the '158 Patent.

25. The '158 Patent describes novel mobile lift cranes and methods for operating mobile lift cranes.

26. Defendant Sany America, without permission of Manitowoc Cranes, has been and still is infringing one or more claims of the '158 Patent as infringement is defined by 35 U.S.C. § 271 by making, selling, offering for sale, using and/or importing crawler cranes, including at least the SCC8500 Crane (the Infringing Products). Manitowoc Cranes requests an award of its actual damages caused by such infringement pursuant to 35 U.S.C. § 284.

27. Defendant Sany America had knowledge of the application leading to the '158 Patent at least as early as January, 2010, when Mr. John Lanning, a named inventor, joined Sany America. Mr. Lanning had knowledge of the application leading to the '158 Patent in his role as a patent liaison between the inventors and outside counsel while employed by Manitowoc Cranes. He also

6

had knowledge of the application leading to the '158 Patent as a named inventor. Upon information and belief, Mr. Lanning had knowledge of the '158 Patent.

28. Defendants had notice of the '158 Patent no later than the date upon which they received this complaint.

29. To the extent that Defendant Sany America has continued or does continue its infringing activities after receiving notice of the '158 Patent, such infringement is willful, entitling Manitowoc Cranes to the recovery of treble damages pursuant to 35 U.S.C. § 284. In addition, this is an "exceptional case" justifying an award of attorneys' fees and costs to Manitowoc Cranes pursuant to 35 U.S.C. § 285.

30. Manitowoc Cranes has suffered damage by reason of the Defendants' infringement of the '158 Patent. Manitowoc Cranes will continue to suffer irreparable harm if Sany America is allowed to continue its infringing activity. Manitowoc Cranes believes that Defendant Sany America will continue to infringe the '158 Patent unless enjoined by this Court. Manitowoc Cranes requests, in addition to an award of its actual damages that have accrued to the date of Judgment, a permanent injunction against infringement from the date of Judgment until expiration of the '158 Patent.

## V. MISAPPROPRIATION OF TRADE SECRETS

31. Manitowoc Cranes is an innovator of, among other technologies, crawler crane technology. It researched, developed, manufactured, and sold cranes in the United States that use novel methods of keeping cranes upright using variable position counterweight technology. It also researched, developed, and plans to sell cranes in the United States that are transformable into multiple configurations. These cranes use different variable position counterweight systems in the different configurations. For many years, Manitowoc Cranes has been a leader in U.S. industry

researching, developing, designing, engineering, and commercially implementing crawler crane technology, including crawler cranes with variable position counterweight technology (the "Manitowoc Technology.").

32. Manitowoc Cranes owns trade secrets concerning the new and proprietary Manitowoc Technology that was and continues to be under development by Manitowoc Cranes. For example, Manitowoc has developed crawler crane technology that allows a crane to be set up in completely different configurations for different purposes. In these different configurations, different variable position counterweight systems are utilized for balancing the cranes. In addition to trade secrets in the variable position counterweight technology and the architecture of a crane that is transformable for different uses utilizing different counterweight technology, Manitowoc Cranes' trade secrets include information regarding the commercialization of this technology. This type of crane represents an important advance in crawler crane technology. Manitowoc Cranes' trade secrets in the Manitowoc Technology, will collectively be referred to as "Manitowoc Trade Secrets." The Manitowoc Trade Secrets include technical information, designs, business information, competitive information, technologies, processes, procedures, strategies, customer names, pricing information, sales forecast data, and/or other information and know-how that was not generally known to Manitowoc Cranes' competitors or others in the crane industry.

33. Manitowoc Cranes has been careful to safeguard these trade secrets. It has maintained the secrecy of many of its inventions and developmental breakthroughs prior to patenting those inventions, giving Manitowoc Cranes an advantage over those competitors who do not know or use them. Manitowoc Cranes has controlled access to information about the Manitowoc Trade Secrets, provides password protection to its IT systems, and caused its employees to use confidential

markings on documents related to the trade secrets. Manitowoc Cranes has also entered into confidentiality agreements with its employees that require keeping the Manitowoc Trade Secrets confidential. Manitowoc Cranes takes reasonable steps to protect the secrecy of the Manitowoc Trade Secrets.

34. Manitowoc Cranes has spent considerable time, effort, and financial resources developing the Manitowoc Trade Secrets.

35. Certain of the Manitowoc Trade Secrets have been and/or are being misappropriated by the Defendants, which sell crawler cranes. On information and belief, the Defendants import these products into the United States.

36. To accomplish the misappropriation of the Manitowoc Trade Secrets, Defendants recruited away from Manitowoc Cranes, Mr. John Lanning, a high ranking engineer at Manitowoc Cranes, who was privy to Manitowoc Cranes' most sensitive proprietary technology, confidential business information regarding the crane market, and Manitowoc Cranes' confidential plans for future products. Mr. Lanning also served as a liaison between outside patent counsel and Manitowoc Cranes' engineer inventors, making him privy to Manitowoc Cranes' patent strategies. Mr. Lanning helped frame Manitowoc Cranes' patent strategies. Defendants offered Mr. Lanning a substantial salary increase over what he was being paid by Manitowoc Cranes. Mr. Lanning works both in China and in Wisconsin for Defendants and with Defendants' engineers on a regular basis and was the lead designer for the Sany SCC8500 Crane--a crane that incorporates certain of the Manitowoc Trade Secrets. Mr. Lanning violated a contractual agreement regarding confidential information, intellectual property, and non-solicitation of employees by providing certain of the Manitowoc Trade

Secrets to Defendants and using those Manitowoc Trade Secrets for the benefit of Defendants. This trade secret information was used to design and is incorporated into the SCC8500 Crane.

37. On information and belief, Defendants' misappropriation of the Manitowoc Trade Secrets and its confidential information is a coordinated effort involving Mr. Lanning, who learned of the Manitowoc Trade Secrets while employed at Manitowoc Cranes and then provided those trade secrets to Defendants so that Defendants could manufacture their own transformable crawler cranes with variable position counterweight technology without investing the resources that Manitowoc Cranes did to develop the necessary technology.

38. On information and belief, Defendants targeted Mr. Lanning due to his knowledge of variable position counterweight technology.

39. Mr. Lanning is an engineer. Until January, 2010, Mr. Lanning was part of a team at Manitowoc Cranes working to develop a revolutionary, next-generation crane that was transformable into different configurations with different variable position counterweight systems in each configuration.

40. Beginning in 1985, Mr. Lanning held various engineering positions for one or more affiliates of The Manitowoc Company (Manitowoc). Mr. Lanning's engineering responsibilities concerned the design and manufacturing of a variety of cranes.

41. Over his career at Manitowoc, Mr. Lanning held various engineering positions, including the Vice President of Engineering. His last position before departing from Manitowoc Cranes in January, 2010 was Manager, Product Architecture Group. The Product Architecture Group worked on the design of future crane products for Manitowoc Cranes.

42. Mr. Lanning also served as the liaison between outside patent counsel for Manitowoc and inventors within Manitowoc Cranes. Mr. Lanning helped to frame Manitowoc's patent strategy and worked closely with outside patent counsel on details of patent applications.

43. Mr. Lanning served as the lead design engineer for Manitowoc's model 31000 crane. In that role, he oversaw the entire project.

44. The model 31000 crane has a variable position counterweight system that was developed by Manitowoc engineers. The 31000 crane incorporates various inventions including some protected by the '928 and '158 Patents. The counterweight system is unique.

45. Part of Mr. Lanning's responsibility at Manitowoc Cranes was to assist in business planning related to new product developments. Mr. Lanning was privy to Manitowoc Cranes' business planning, including the development of new products.

46. Because of Mr. Lanning's position at Manitowoc Cranes, he was privy to confidential and proprietary information regarding Manitowoc Cranes' crawler cranes, including its revolutionary variable position counterweight technology, as well as Manitowoc Cranes' strategic planning for the use of that technology. He was exposed to technical information, drawings, and designs that were not known to Manitowoc Cranes' competitors or others in the crawler crane industry. Specifically, the team on which Mr. Lanning served was working to develop a future generation crawler crane that was transformable into multiple configurations, each having a variable position counterweight system, and wherein the variable position counterweight system was different in the different configurations.

47. While working on this project, Mr. Lanning used Manitowoc Cranes' resources, including other employees, to assist in the development of a transformable crawler crane product. Mr. Lanning helped to create drawings of the design and was privy to the details of the project.

48. Mr. Lanning understood the commercial value of this technology and its revolutionary nature.

49. In 2008, Mr. Lanning entered into a Confidentiality, Intellectual Property and Nonsolicitation of Employees Agreement. Mr. Lanning had previously entered into other similar agreements.

50. Section 1(b) of Lanning's 2008 agreement provides, "In addition to all duties of loyalty imposed on me by law, I will not: (i) directly or indirectly disclose any Confidential Information to anyone outside of Manitowoc or its employees (except to persons acting on Manitowoc's behalf with a legitimate need to know such information), nor (ii) use such Confidential Information for my own benefit or for the benefit of any other person or organization without the prior written consent of an authorized officer of Manitowoc. As to Confidential Information which is a trade secret, this obligation of confidentiality will continue indefinitely or until such information: (i) has been made available generally to the public other than through my breach of this Agreement or (ii) is not considered a trade secret under state law. As to all other Confidential Information (which is not a trade secret under state law), this obligation of confidentiality will continue until the earlier of: (i) five years after my employment with Manitowoc has ended for any reason, or (ii) the Confidential Information has been made available generally to the public other than through my breach of this Agreement."

12

51. Mr. Lanning understood at the time that he signed the agreement that it imposed restrictions following the termination of his employment. He understood that, under the agreement, intellectual property created while employed by Manitowoc Cranes is the property of Manitowoc Cranes. Mr. Lanning understood that confidential information, included anything that was not generally available publicly, and he further understood that he was not to disclose confidential information to anyone outside of the company.

52. Mr. Lanning was reminded of his duties under the agreement at an exit interview with Mr. Larry Weyers. Mr. Weyers reminded Mr. Lanning of his obligations and informed Mr. Lanning that Manitowoc Cranes would take legal action if Mr. Lanning violated the agreement.

53. In the fall of 2009, Mr. Lanning discussed a potential position with SANY America. During those discussions, Mr. Lanning disclosed, without authority of Manitowoc Cranes, his ideas about the critical things that it takes to be successful with crawler cranes in the global market.

54. Shortly after resigning from Manitowoc Cranes, Mr. Lanning began working for Sany America and working with Sany Heavy Industry as a high ranking engineer. On information and belief, Mr. Lanning helped to conceive and plan the Sany SCC8500 crane and oversaw the design for that crane.

55. Notwithstanding the promises that Mr. Lanning made in his agreement, Mr. Lanning misappropriated from Manitowoc Cranes the design for a transformable crane being developed for Manitowoc Cranes, including the variable position counterweight concept. Mr. Lanning also misappropriated the knowledge that there was a market need for such a product and that the crane should fall within a specific capacity range. Upon information and belief, Mr. Lanning shared the

13

Manitowoc Trade Secrets and other confidential information of Manitowoc Cranes with Defendants for use in Sany's SCC8500 crane.

56. Manitowoc Cranes never authorized or approved of the sharing of the Manitowoc Trade Secrets and confidential information with Defendants.

57. Defendants have unfairly competed and continue to unfairly compete with Manitowoc Cranes by Defendants' manufacture and sale of cranes manufactured by or on behalf of Defendants using misappropriated trade secrets of Manitowoc Cranes.

58. Unless prevented from doing so, Defendants are and will continue such misappropriation by manufacturing, selling, and/or importing crawler cranes that use misappropriated Manitowoc Trade Secrets--for example, the SCC8500 crawler crane. Defendants are likely to capture a substantial portion of the market share that rightfully belongs to Manitowoc Cranes.

59. The Accused Products are crawler cranes with variable position counterweight systems, such as the Sany model SCC8500 crane. Defendants have advertised this crane as including a variable position counterweight system. That system incorporates variable position counterweight technology that contains certain Mainitowoc Trade Secrets that were misappropriated by Defendants. On information and belief, the Accused Products are imported into and offered for sale in the United States through Defendants' sales representatives, dealers, and/or other distribution channels.

60. The Accused Products were manufactured by or for Defendants without the authority or consent of Manitowoc Cranes, and use one or more of the Manitowoc Trade Secrets. Thus, without authority or consent, Defendants actually, threateningly, and inevitably incorporate and are incorporating one or more of the Manitowoc Trade Secrets, including the variable position counterweight technology and the transformable nature of the crane.

61. The Manitowoc Trade Secrets derive independent economic value from not being generally known in the industry, or to the general public, and not being readily ascertainable by proper means by persons outside Manitowoc Cranes.

62. In connection with his employment with Manitowoc Cranes, Mr. Lanning was aware of the Manitowoc Trade Secrets. The Manitowoc Trade Secrets constitute trade secrets within the meaning of Wis Stat. § 134.90(1)(c).

63. Upon information and belief, Mr. Lanning assisted Defendants in developing the SCC8500 crane by using and/or disclosing Manitowoc's Trade Secrets. Upon information and belief, Defendants were aware of and encouraged the misappropriation as evidenced by, at least, the targeting of Mr. Lanning for hiring due to his knowledge of variable position counterweight technology used in crawler cranes.

64. Mr. Lanning breached a duty of confidentiality when he used the Manitowoc Trade Secrets in connection with his work for Defendants. By providing the Manitowoc Trade Secrets to Defendants, Mr. Lanning engaged in theft of those Manitowoc Trade Secrets.

65. Mr. Lanning's actions were taken in the course and scope of his employment.

66. Defendants are responsible for the actions of Mr. Lanning.

67. Defendants acquired the Manitowoc Trade Secrets through their targeting for hiring, hiring, and interaction with Mr. Lanning. Defendants knew or had reason to know that its acquisition of the Manitowoc Trade Secrets was by improper means. Specifically, those trade secrets were obtained by theft and/or by a breach of duty of confidentiality.

68. Defendants misappropriated the Manitowoc Trade Secrets by disclosing and using those trade secrets without permission. Defendants used improper means to gain knowledge of those trade

15

secrets. At the time of Defendants' disclosure and use, Defendants knew and/or had reason to know that their knowledge of the trade secrets was derived from Mr. Lanning, who had acquired the trade secrets by improper means. Further, at the time of Defendants' disclosure and use, Defendants knew or had reason to know that their knowledge of the trade secrets was derived from a person, Mr. Lanning, who owed a duty to Manitowoc Cranes to maintain the secrecy of the trade secrets and to not use them for the benefit of a competitor.

69. The actions of Defendants have been willful and deliberate, entitling Manitowoc Cranes to an award of punitive damages.

## VI. PRAYER FOR RELIEF

70. Manitowoc Cranes, therefore, prays that the Court enter Judgment in its favor against all the Defendants granting the following relief:

> (a) a permanent injunction prohibiting further patent infringement by all Defendants and all of their officers, agents, affiliates, servants, customers, and employees, and all other persons in active concert or participation with them;
>
> (b) an award of Manitowoc Cranes' damages, including costs, prejudgment interest, and postjudgment interest;
>
> (c) a disgorgement of profits of all Defendants;
>
> (d) a trebling of damages for willful infringement;
>
> (e) a finding that this is an exceptional case and an award of Manitowoc Cranes' attorneys' fees and costs;

16

(f) a declaration that the '928 Patent is valid, enforceable, and infringed by Defendants;

(g) a declaration that the '158 Patent is valid, enforceable, and infringed by all Defendants;

(h) destruction of all products, engineering drawings, molds, specifications, documents, plans, or other items created by Defendants using Manitowoc Cranes' trade secrets;

(i) an injunction requiring Defendants to assign to Manitowoc Cranes any patent application containing trade secrets of Manitowoc Cranes;

(j) damages for Defendants' misappropriation of trade secrets, including without limitation their unjust enrichment from such misappropriation;

(k) punitive damages, costs, and attorneys fees due to the willful and malicious misappropriation of Manitowoc Cranes' trade secrets;

(l) an injunction prohibiting further use by Defendants of the trade secrets of Manitowoc Cranes; and

(m) such other and further relief as the Court deems just.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, Manitowoc Cranes demands trial by jury of all issues so triable.

DATED: June 12, 2013								Respectfully submitted,

							/s/ Joel S. Aziere
							Joel S. Aziere (WI Bar #1030823)
							Sarrie L. Devore (WI Bar #1070683)
							Lindsey A. Kraig (WI Bar #1062737)
							BUELOW, VETTER BUIKEMA OLSON & VLIET, LLC
							20855 Watertown Road, Suite 200
							Waukesha, WI 53186
							(262) 364-0300 Telephone
							(262) 364-0320 Facsimile

							OF COUNSEL:

							David G. Wille
							BAKER BOTTS L.L.P.
							2001 Ross Avenue
							Dallas, Texas 75201
							(214) 953-6595 Telephone
							(214) 661-4595 Facsimile

							Mark L. Whitaker
							Thomas C. Martin
							BAKER BOTTS L.L.P.
							The Warner
							1299 Pennsylvania Ave.,
							NW Washington, D.C. 20004-2400
							202-639-7700

							L. Gene Spears
							Tom Rooney
							BAKER BOTTS L.L.P.
							One Shell Plaza

910 Louisiana Street
Houston, TX  77002-4995
Telephone:  (713) 229-1234


Joseph Gray
Stephanie DeBrow
BAKER BOTTS L.L.P.
98 San Jacinto Boulevard
Suite 1500
Austin, TX  78701-4078
Telephone:  (512) 322-2500


ATTORNEYS FOR PLAINTIFF
MANITOWOC CRANES, LLC