UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MANITOWOC CRANES LLC,

   Plaintiff,

 v.               Case Nos. 13-C-677, 15-C-647

SANY AMERICA INC. and
SANY HEAVY INDUSTRY CO. LTD.,

   Defendants.

## DECISION AND ORDER

   On June 12, 2013, Plaintiff Manitowoc Cranes LLC initiated a lawsuit against Defendants Sany America Inc. and Sany Heavy Industry Co. Ltd. (collectively "Sany), asserting claims of patent infringement and misappropriation of trade secrets. *See* Case No. 13-C-677. The court stayed proceedings in the case on July 17, 2013 pending resolution of an investigation by the United States International Trade Commission (ITC). Manitowoc filed a second action against Sany on May 28, 2015, asserting a claim for tortious interference with contract and jurisdiction under 28 U.S.C. § 1332. *See* Case No. 15-C-647. The court consolidated the cases on November 18, 2015 and continued the stay, pending the resolution of the ITC proceedings. On December 7, 2016, the parties notified the court of the conclusion of the ITC proceedings and the resulting appeal, and on December 20, 2016, the court lifted the stay and reopened the consociated case. Manitowoc subsequently filed an amended complaint asserting only state law misappropriation of trade secrets and tortious interference with contract claims against Sany. The court has jurisdiction under 28 U.S.C. § 1332.

This matter is before the court on Manitowoc's motion for summary judgment filed under this court's Fast Track Summary Judgment procedure. Manitowoc requests that the court enter partial summary judgment finding that Sany is liable for trade secret misappropriation and enter summary judgment against Sany's declaratory judgment counterclaims. For the following reasons, Manitowoc's motion will be granted-in-part and denied-in-part.

## BACKGROUND

Manitowoc is an innovator of crawler crane technology. It complains that Sany misappropriated eight of its trade secrets and tortiously interfered with its employee's contract in violation of Wisconsin law. This is not the first time Manitowoc has raised misappropriation claims against Sany, however. It also brought this claim before the ITC in 2013. *See In the Matter of Certain Crawler Cranes and Components Thereof*, No. 337-TA-887. The ITC held a three-day evidentiary hearing before an Administrative Law Judge (ALJ) on Manitowoc's claims beginning March 25, 2014. On May 6, 2015, the ITC issued its Commission Opinion, unanimously finding that Sany had violated the Tariff Act by misappropriating Manitowoc's protectable trade secrets and infringing one of Manitowoc's patents. Pl.'s Proposed Findings of Fact (PPFOF) ¶ 11, ECF No. 65. The ITC determined the appropriate remedy included a ten-year limited exclusion order. It also issued a ten-year cease and desist order, effective June 15, 2015. *Id.* ¶¶ 65–67. Sany appealed the ruling to the United States Court of Appeals for the Federal Circuit. *Id.* ¶ 68. On October 11, 2016, the Court of Appeals affirmed the ITC's decision and entered judgment without opinion. *Id.* ¶ 69. This matter is before the court on Manitowoc's motion for partial summary judgment, urging the court to adopt the ITC's findings regarding misappropriation of Manitowoc's trade secrets.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

**ANALYSIS**

Manitowoc argues that summary judgment is appropriate because the ITC's determination that Manitowoc's trade secrets were protectable and that Sany misappropriated those trade secrets have preclusive effect in this litigation. The Supreme Court has "long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991). It has recognized that "in those situations in which Congress has authorized agencies to resolve disputes, 'courts may take it as given that Congress has legislated with the expectation that the principle will apply except when a statutory purpose to the contrary is evident.'" *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015) (quoting

*Astoria*, 501 U.S. at 108). In other words, "absent a contrary indication, Congress presumptively intends that an agency's determination . . . has preclusive effect." *Id.* at 1305.

Manitowoc argues that this presumption applies to the ITC's determination of trade secret misappropriation. Whether an ITC determination regarding trade secret misappropriation has preclusive effect in subsequent litigation is an issue of first impression. Although there are no cases specifically addressing this issue, Manitowoc cites cases where federal courts have concluded ITC determinations have preclusive effect in other areas of unfair trade practices. For instance, the Second Circuit has held that "ITC adjudications of unfair trade practice and trademark infringement causes of action are entitled to res judicata effect." *Union Mfg. Co., Inc. v. Han Baek Trading Co., Ltd.*, 763 F.2d 42, 46 (2d Cir. 1985). The First Circuit has also found that an ITC proceeding had res judicata effect on antitrust claims. *Aunyx Corp. v. Canon U.S.A., Inc.*, 978 F.2d 3, 7 (1st Cir. 1992). Manitowoc also argues that there is no evidence that Congress did not intend for ITC misappropriation determinations to have preclusive effect in later proceedings.

Conversely, Sany contends that because no court has given preclusive effect to this category of ITC determination, the general rule against ITC preclusion set forth in *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558 (Fed. Cir. 1996), should apply to the instant case. However, *Texas Instruments* is distinguishable from the case at hand. In that case, the plaintiff filed a patent infringement action in federal court as well as a parallel action before the ITC. The plaintiff prevailed in the action before the ITC, whose determination and exclusion order were ultimately affirmed by the Federal Circuit. *Id.* at 1562–63. The defendant subsequently prevailed in district court. The plaintiff appealed the district court's decision, arguing that the ITC's prior finding of infringement by "the same defendants, using the same processes," and the Federal Circuit's later

4

affirmance of that determination should be given preclusive effect under the doctrine of collateral estoppel. *Id.* at 1568.

The Federal Circuit rejected the plaintiff's argument. It noted that "an administrative agency decision, issued pursuant to a statute, cannot have preclusive effect when Congress, either expressly or impliedly, indicated that it intended otherwise." *Id.* at 1568. It examined the legislative history of the Trade Reform Act of 1974, amending the Tariff Act of 1930, which cautioned, "In patent-based cases . . . [t]he Commission's findings neither purport to be, nor can they be, regarded as binding interpretations of the U.S. patent laws in particular factual contexts. Therefore, it seems clear that any disposition of a Commission action by a Federal Court should not have res judicata or collateral estoppel effect in cases before such courts." *Id.* at 1569 (quoting S. Rep. No. 1298, 93d Cong., 2d Sess. 196 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7186, 7329). The court held that "[b]ased on this legislative history . . . Congress did not intend decisions of the ITC on *patent issues* to have preclusive effect." *Id.* at 1569 (citations omitted) (emphasis added).

Although the Federal Circuit found that ITC decisions on patent issues do not have preclusive effect in subsequent litigation, it did not create a general rule against preclusion with respect to all ITC determinations as Sany suggests. "The jurisdictional bar to *res judicata* treatment of ITC patent validity determinations simply does not apply to other decisions by the ITC." *Union Mfg. Co., Inc.*, 763 F.2d at 45. In short, the court finds that ITC determinations regarding the unfair trade practices of trade secret misappropriation are entitled to preclusive effect. The court will now consider whether Sany is collaterally estopped from disputing that it misappropriated eight Manitowoc trade secrets.

5

Collateral estoppel, or issue preclusion, prevents the relitigation of issues resolved in an earlier suit. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). For collateral estoppel to apply, the following elements must be satisfied: "(1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action." *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014) (citation omitted).

Sany asserts that the court cannot apply the doctrine of collateral estoppel to Manitowoc's trade secret claim because the issue presently before this court was not decided by the ITC, namely, whether Sany is liable for trade secret misappropriation under Wisconsin law. It maintains that the ITC only determined whether Sany misappropriated Manitowoc's trade secrets under federal law, and therefore, the issue sought to be precluded is not the same as the one in the prior litigation. Ordinarily, "[i]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same." *B & B Hardware*, 135 S. Ct. at 1306 (alterations in original) (quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4417 (2d ed. 2002)). Nevertheless, "[m]inor variations in the applications of what is in essence the same legal standard do not defeat preclusion." *Smith v. Bayer Corp.*, 564 U.S. 299, 312 n.9 (2011). That is because a party should not be able to "escape preclusion simply by litigating anew in tribunals that apply that one standard differently." *B & B Hardware*, 135 S. Ct. at 1307. In short, the court must determine whether the federal and Wisconsin standards regarding trade secret misappropriation are the same. Based on a comparison of the laws, the court finds that they are.

6

Recognizing that trade secret law "is generally governed by widely recognized authorities such as the Restatement of Unfair Competition and the Uniform Trade Secrets Act," the Federal Circuit has held that the ITC should apply "a single federal standard, rather than the law of a particular state," to determine the misappropriation of a trade secret. *TianRui Grp. Co. Ltd. v. ITC*, 661 F.3d 1322, 1327–28 (Fed. Cir. 2011). In this case, the ITC relied on both the Uniform Trade Secrets Act (UTSA) and the Restatement to determine whether Sany misappropriated Manitowoc's trade secrets. The UTSA defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (i) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." UTSA § 1(4) (1985). The UTSA defines misappropriation as

> (i) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (ii) disclosure or use of a trade secret of another without express or implied consent by a person who
>
>> (A) used improper means to acquire knowledge of the trade secret; or
>>
>> (B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was
>>
>>> (I) derived from or through a person who had utilized improper means to acquire it;
>>>
>>> (II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>>
>>> (III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

7

> (C) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

UTSA § 1.2.

Wisconsin has adopted its own version of the UTSA, Wis. Stat. §134.90. To establish misappropriation of a trade secret under Wisconsin's Uniform Trade Secrets Act (WUTSA), a plaintiff must show (1) the existence of a trade secret and (2) the occurrence of a misappropriation. *See Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853–54, 434 N.W.2d 773 (1989). The WUTSA, like the UTSA, defines trade secret as

> information, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply:
>
> 1. The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> 2. The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.

Wis. Stat. § 134.90(1)(c). As for determining whether misappropriation has occurred, the WUTSA instructs:

> No person, including the state, may misappropriate or threaten to misappropriate a trade secret by doing any of the following:
>
> (a) Acquiring the trade secret of another by means which the person knows or has reason to know constitute improper means.
>
> (b) Disclosing or using without express or implied consent a trade secret of another if the person did any of the following:
>
> > 1. Used improper means to acquire knowledge of the trade secret.

8

> 2. At the time of disclosure or use, knew or had reason to know that he or she obtained knowledge of the trade secret through any of the following means: a. Deriving it from or through a person who utilized improper means to acquire it. b. Acquiring it under circumstances giving rise to a duty to maintain its secrecy or limit its use. c. Deriving it from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use. d. Acquiring it by accident or mistake.

Wis. Stat. § 134.90(2). A violation of either subsection constitutes a misappropriation of trade secret. *Minuteman*, 147 Wis. 2d at 855.

Sany asserts that the ITC applied a legal standard different from the one this court must apply under Wisconsin law because the ITC used the Restatement of Agency to find Sany partially liable under a theory of vicarious liability. After reviewing the elements of trade secret misappropriation under the UTSA, the ITC concluded Sany is labile for its employees' communication of Manitowoc's protected information because they were acting within the scope of their employment when they did so. ECF No. 66-2 at 55. The ITC further found that Sany actively encouraged misappropriation of Manitowoc's trade secrets and knew the trade secrets were acquired by improper means. *Id.* at 56. Sany maintains that since the WUTSA does not contain any provision for vicarious liability, the requirements of preclusion cannot be satisfied. Defs.' Br. at 10, ECF No. 72. Even though the ITC analyzed misappropriation under a theory of vicarious liability, the underlying standards articulated by the UTSA and the WUTSA are the same.

Moreover, while no Wisconsin court has addressed the doctrine of respondeat superior in connection with trade secret misappropriation, other jurisdictions have applied the doctrine under the UTSA as enacted in their respective states. *See, e.g.*, *Thola v. Henschell*, 140 Wash. App. 70, 164 P.3d 524, 529 (2007) (applying doctrine of respondeat superior under Washington's UTSA); *Newport News Indus. v. Dynamic Testing, Inc.*, 130 F. Supp. 2d 745, 754 (E.D. Va. 2001) (applying

9

doctrine in case based on Virginia's UTSA); *Ethypharm S.A. France v. Bentley Pharm., Inc.*, 388 F. Supp. 2d 426, 432 (D. Del. 2005) (applying doctrine under Delaware's UTSA); *Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, No. 10-02605, 2010 WL 2764714 (N.D. Cal. July 13, 2010) (finding defendant company liable for acts of trade secret misappropriation under CUTSA committed by employee). In an effort to maintain uniformity in the application and construction of the law, the WUTSA directs that the statute be "applied and construed to make uniform the law relating to misappropriation of trade secrets among states enacting substantially identical laws." Wis. Stat. § 134.90(7). As a result, Wisconsin courts are required to give careful consideration to "decisions by other jurisdictions on questions involving the UTSA." *Minuteman*, 147 Wis. 2d at 858.

With this guidance in mind, the court concludes that a Wisconsin court would not apply a different standard under the WUTSA than the one employed by the ITC. Though there are slight variations in the wording of the federal and state statutes, these minor differences in what is "in essence the same legal standard do not defeat preclusion." *Smith*, 564 U.S. at 312 n.9. Sany has failed to adequately identify any substantive difference between the UTSA and the WUTSA or show that Wisconsin courts would apply a "significantly different . . . analysis" to the issue presented here. *Id.* Therefore, the court is satisfied that the issue presented in this lawsuit is the same as the one raised in the ITC proceeding. Moreover, there is no dispute that the issue was actually litigated in the ITC proceeding and that Sany was fully-represented throughout the entire litigation. The parties engaged in extensive discovery and participated in a three-day evidentiary hearing before an ALJ. PPFOF ¶¶ 5–8. At the hearing, Sany presented three fact witnesses and one expert witness and had the opportunity to cross-examine Manitowoc's fact and expert witnesses. *Id.* ¶ 9. After the hearing,

the parties engaged in four rounds of post-hearing briefing, then filed six additional briefs to the ITC Commissioners once the ALJ issued the Final Initial Determination. *Id.* ¶ 10. Further, the issues were determined by a final and valid judgment and the finding of trade secret misappropriation was essential to that judgment. In short, all of the elements of issue preclusion are fully satisfied, and Sany is precluded from challenging the general elements of misappropriation in this litigation. Sany is therefore liable for trade secret misappropriation under Wisconsin law and Manitowoc is entitled to a partial summary judgment in its favor on this previously litigated matter.

Manitowoc also maintains that the ITC determination precludes Sany from asserting eight counterclaims in this action. At the outset, it appears that Sany's counterclaims may be entirely superfluous. The declaratory relief Sany seeks appears little more than a negation of the claims Manitowoc has asserted against it. Whatever need Sany may have for such relief would seem to evaporate in the event Manitowoc does not prevail on its claims. Entirely aside from this concern, it is clear that the ITC decision precludes some of Sany's counterclaims. Counterclaims I through VI request declaratory judgment that Manitowoc's trade secrets are not protectable as trade secrets. As discussed above, this issue is identical to the one actually litigated before the ITC and meets all of the requirements of issue preclusion. In short, Sany is precluded from challenging the protectability of Manitowoc's trade secrets, and Manitowoc is entitled to summary judgment with respect to these counterclaims.

Counterclaim VII seeks a judgment finding that Sany did not induce any former Manitowoc employee to breach his employment agreement with Manitowoc. Counterclaim VIII seeks a judgment finding that Manitowoc "did not suffer any damage from the purported breach of one or more employment agreements purportedly induced by [Sany] as [Sany] did not utilize any purported

11

trade secret information that forms the basis for [Manitowoc's] tortious interference claim." ECF No. 55 at ¶ 34. Manitowoc concedes that the ITC did not address its tortious interference with contract claim. Instead, it argues that the ITC addressed the issue when it rejected Sany's argument that it was not vicariously liable for misappropriation by its employees. Although the "factual setting of both suits may be the same," these issues are not identical. *B & B Hardware*, 135 S. Ct. at 1306 (citation omitted). Manitowoc's tortious interference with contract claim involves the application of a different legal standard than that used by the ITC to determine vicarious liability for trade secret misappropriation. In addition, Sany could not have raised this counterclaim in the previous proceeding because counterclaims are subject to mandatory removal. *See* 19 U.S.C. § 1337(c). Therefore, Sany is not precluded from asserting these counterclaims.

## CONCLUSION

For the foregoing reasons, Manitowoc's motion for partial summary judgment (ECF No. 63) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The motion is granted to the extent that Sany is precluded from relitigating issues regarding Mantiwoc's misappropriation of trade secret claims and is therefore liable for trade secret misappropriation under Wisconsin law. Manitowoc is also entitled to summary judgment on counts one through six of Sany's counterclaims. The motion for summary judgment is denied with respect to counts seven and eight of the counterclaims.

Dated at Green Bay, Wisconsin this   11th   day of December, 2017.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court